DELBELLO DONNELLAN
WEINGARTEN WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

DUFOUR PASTRY KITCHENS INC.,                          Chapter 11
                                                      Case No. 16-12975 (smb)
                              Debtor.
---------------------------------------------------------------X

**MOTION FOR AN ORDER (I) SCHEDULING
A PRELIMINARY HEARING ON DEBTOR'S MOTION REQUESTING
USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363(c)(2) AND
BANKRUPTCY RULE 4001, (II) AUTHORIZING THE DEBTOR'S USE
OF CASH COLLATERAL ON AN INTERIM BASIS AND PROVIDING
ADEQUATE PROTECTION THEREFORE PURSUANT TO 11 U.S.C.
§§361 AND 362, AND (III) SCHEDULING A FINAL HEARING**

Dufour Pastry Kitchens, Inc., the above captioned debtor and debtor-in-possession (the

"Debtor"), by its proposed attorneys, DelBello, Donnellan, Weingarten, Wise & Wiederkehr,

LLP and its Vice President, Carla Krasner, files  this motion (the "Motion") for entry of an Order

Scheduling a Preliminary Hearing on the Debtor's Motion Requesting the Use of Cash

Collateral, (II) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. §363 and

Providing Adequate Protection Therefor Pursuant to 11 U.S.C. §§361 and 362 and (III)

Scheduling a Final Hearing, respectfully state and represent as follows:

## **Jurisdiction**

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory bases for the relief requested herein are §§ 105(a), 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## **Background**

3. On October 24, 2016, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   The Debtor has continued in possession of its property and the management of its business affairs as debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed.

4. For over thirty years, the Debtor, a woman-owned business, has made and sold premium frozen ready-to-bake puff pastry dough, tart shells, and hors d'oeuvres.   Its products are made by hand in the Bronx using butter sourced from an upstate New York creamery, then shipped across the country to distributors serving the finest caterers, restaurants, hotels, and such specialty supermarket chains as Whole Foods, Sprouts, King's, Giant Eagle and Fresh Market. In New York City, customers include the Waldorf Astoria, Sheraton NY, and Grand Hyatt as well as specialty food shops like Zabar's, Dean & Deluca, Citarella and Fairway.  The Debtor produces pastry components (business to business) to manufacturers who make finished product for Walmart, Costco and other big box stores, and also produces elegant private label hors d'oeuvres for mail order catalogs.  Their brand, particularly renowned for their puff pastry has

garnered praise from *The New York Times*, *Bon Appetit* magazine and such celebrity chefs and food personalities as Martha Stewart, Rachel Ray, Mario Batali and Thomas Keller.   Over 65% of the Debtor's workforce are residents of the Bronx, and the Debtor is a Nationally Certified Women Owned Business (WBENC).

5.  The Debtor's business is seasonal, with an estimated 60% of its revenue earned between the months of September and December.  Revenues have consistently been in the range of $3-3.75 million per year.

6.  In 2007, the Debtor moved its operations from Manhattan to a warehouse at 251 Locust Avenue, Bronx, New York, the Port Morris section of the Bronx.  The area was designated by the Federal Government as an "Empowerment Zone" to promote business development and jobs in the area.  The Debtor had borrowed $875,967 from the Bronx Overall Economic Development Corporation ("BOEDC") for leasehold improvements and equipment which has been substantially paid down, and is currently an unsecured loan.

7.  During the build-out of the Bronx warehouse, it became necessary to acquire additional funding for unforeseen construction and equipment needs.  Commerce Bank (TD Bank) supplied the additional $ 670,000 with an SBA 7A loan.

8.  Through the New York City R.E.A.P. relocation moving benefit, the Debtor benefitted from an approximately $ 96,000 tax credit per year for a five-year period.  During that time the Debtor's business flourished and the Debtor was able to meet its daily operating expenses as well as its debt service.  When the tax credit came to an end, the Debtor struggled to keep up with its long term debt obligations.

9.  The Debtor approached its secured creditor, TD Bank, N.A. to discuss restructuring its loan payments.  The original loan for $670,000 had been dutifully paid down to approximately

$250,000, but with the expiration of the tax credit the Debtor sought to restructure its obligations.

10.     Unable to resolve with either TD Bank or the Small Business Administration, the Debtor fell behind on its loan payments.  A collection action was commenced, *TD Bank, N.A. v. Dufour Pastry Kitchens, Inc., Judith Arnold and Carla Krasner*, Supreme Court, Bronx County, IndexNo. 22525/2015E.  As of the Filing Date, a motion for summary judgment was drafted and a judgment was recently entered in favor of TD Bank.

11.     The Debtor does not dispute the loan obligation, but simply needs time to restructure the obligation.

12.     The Debtor's desire is to utilize the bankruptcy process in order to generally restructure and reorganize its affairs as well as explore options for expansion, the raising of capital and other strategic transactions.  Properly capitalized, the Debtor believes it could greatly increase revenues and profitability.  The Debtor believes that with the help of counsel it will be able to restructure its affairs and propose a plan of reorganization that it is in the best interests of its creditors and affords them the greatest recovery possible.

### The TD Bank N.A. Pre-Petition Secured Debt

13.     On or about December 21, 2006, the Debtor entered into a U.S. Small Business Administration Note in favor of Commerce Bank N.A. ("Commerce"), (the "SBA Note") in which Commerce Bank extended credit to the Debtor in the original principal amount of $670,000, with the total current approximate outstanding amount having been reduced via payments to of $250,000, at an interest rate equal to 10.75%.  A copy of the SBA Note is annexed as **Exhibit A.**

14.     On or about December 21, 2006, the Debtor entered into a Loan and Security Agreement with Commerce Bank (the "SBA Security Agreement") which secured the Debtor's

obligations under the SBA Note by granting Commerce a lien on certain of the Debtor's property (the "SBA Collateral").  A copy of the SBA Security Agreement is annexed as **Exhibit B.** The grant of security by the Debtor to Commerce Bank pursuant to the SBA Security Agreement was allegedly perfected by a UCC-1 financing statement filed on February 1, 2007, and a Continuation filed on October 5, 2011. Copies of the UCC-1 Financing Statement and Continuation are annexed as **Exhibit C.**

15.     Upon information and belief, TD Bank, N.A. ("TD Bank") is the successor in interest to Commerce Bank by way of a merger.  On October 5, 2011, TD Bank filed a UCC-1 statement providing that the Organization's Name changed to "TD Bank, N.A. as successor by merger to Commerce Bank, N.A."  A copy of the change in name statement is annexed as **Exhibit D**. (The SBA Note, SBA Security Agreement and UCC-1 financing statements are collectively referred to herein as the "SBA Loan Documents").

16.     The SBA Security Agreement provides, *inter alia,* that Commerce Bank shall be granted a security interest in, a lien on and a pledge and assignment of certain of the Debtor's property.

17.     The Collateral is defined in the SBA Security Agreement as:

"Collateral" shall mean all Borrower's present and future right, title and interest in and to any and all of the personal property of Borrower whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation (i) accounts, (ii) chattel paper, (iii) goods, (iv) inventory, (v) equipment, (vi) fixtures, (vii) farm products, (viii) instruments, (ix) investment property, (x) documents, (xi) commercial tort claims, (xii) deposit accounts, (xiii) letter of credit rights, (xiv) general intangibles, (xv) supporting obligations, and (xvi) proceeds and products of foregoing.

18.     The collateral is defined in the UCC Financing Statement as:

All personal property of Debtor of every kind and nature, wherever located, whether now owned or hereafter acquired, including without limitation, the following categories of property as defined in Revised Article 9 of the Uniform

Commercial Code goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing ), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of the foregoing.

19.    As of the Petition Date, the Debtor was indebted to TD Bank in the approximate

outstanding amount of $250,000.

20.    The Debtor submits that the value of the Debtor's assets far exceed the Debtor's

indebtedness to TD Bank, providing the bank with a substantial "equity cushion".

## The U.S. Foods, Inc. Pre-Petition Disputed Secured Debt

21.    In 2014, the Debtor began doing business with U.S. Foods, Inc. ("US Foods").

However, the Debtor does not believe it executed any Note or Security Agreement in favor of

US Foods.

22.    However, US Foods filed a UCC-1 financing statement filed on March 19, 2014

(the "US Foods UCC-1").  A copy of the US Foods UCC-1 is annexed as **Exhibit E.**

23.    The collateral is defined in the US Foods UCC-1 as follows:

To secure the full and timely payment by Applicant to Seller of all now existing and hereafter arising amounts due Seller, Applicant hereby grants to Seller a priority (purchase money) security interest and lien in and to all goods, inventory, equipment and fixtures sold to Applicant by Seller from time to time and a separate security interest in all other assets of Applicant, including, without limitation, all of Applicant's now existing or owned hereafter arising or acquired (a) accounts, (b) goods for sale, lease or other disposition which have given rise to Accounts and have been returned to or repossessed or stopped in transit by Applicant and (c) goods, including, without limitation, inventory, equipment, fixtures, trade fixtures and vehicles.

24.    The Debtor recently discovered the UCC-1 Financing Statement and contacted

US Foods, which upon information and belief is in the process of filing a UCC-3 Termination

Statement.

25.    The Debtor therefore asserts that US Foods does not have a valid or enforceable security interest in any of the Debtor's property.

## Relief Requested

26.    The Debtor submits this Motion pursuant to Bankruptcy Code §363(c)(2)(B) and 361 and 362 and Bankruptcy Rule 4001(b) with respect to the Debtor's request for authority to use property which may constitute Collateral in which TD Bank and possibly US Foods are likely to assert a security interest, substantially in accordance with the terms and conditions set forth in the proposed Interim Order (the "Order") annexed hereto as **Exhibit F.** The Debtor believes that TD Bank and US Foods are the only parties that may have a perfected security interest in the Debtor's property which may constitute, *inter alia*, Cash Collateral.

27.    The proposed Order grants the Debtor the authority to use the Collateral pursuant to Bankruptcy Code §§363 (c)(1) and (2) and Bankruptcy Rule 4001(c) to the extent necessary to continue the operation of its business and to preserve the value of its estate during the course of the Chapter 11 case.

28.    Section 363(a) of the Bankruptcy Code states as follows:

"In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

29.    Section 363(c)(1) of the Bankruptcy Code provides as follows:

"(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale

or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

30.    Section 363(d) of the Bankruptcy Code provides as follows:

"(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

31.    Accordingly, pursuant to § 363(c)(2) of the Bankruptcy Code, the consent of the Secured Creditors or authority from this Court is required to use Collateral in which they hold perfected security interests.

## Adequate Protection

32.    The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994); In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr, D.N.J. 1986), citing In re Coors of the Cumberland, 19 B.R. 313 (Bankr. M.D. Tenn. 1982). See also, In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

33.    Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996);

In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

34.     The Order provides that, as adequate protection for the Debtor's use of TD Bank's Collateral and in consideration for the use of the Collateral, the Debtor shall grant TD Bank replacement liens in all of the Debtor's pre-petition and post-petition assets and proceeds, including the Collateral and the proceeds of the foregoing, to the extent that TD Bank has valid a security interest in said pre-petition assets on the Petition Date and in the continuing order of priority that existed as of the Petition Date (the "Replacement Liens").

35.     The Replacement Liens shall be subject and subordinate only to: (a) United States Trustee fees payable under 28 U.S.C. Section 1930 and 31 U.S.C Section 3717; (b) professional fees of duly retained professionals in this Chapter 11 case as may be awarded pursuant to Sections 330 or 331 of the Code or pursuant to any monthly fee order entered in the Debtor's Chapter 11 case; (c) the fees and expenses of a hypothetical Chapter 7 trustee to the extent of $10,000; and  (d) the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 ("Avoidance Actions") of the Bankruptcy Code (collectively, the "Carve-Outs").

36.     In addition, the Debtor proposes, as further adequate protection for the use of cash collateral, to make monthly interest only payments to TD Bank at the contract rate provided under the SBA Note.

37.     The Debtor submits that, in order to preserve the Debtor's estate and ensure the viability of the Debtor during the Chapter 11 case, TD Bank should be granted Replacement Liens with the same nature, extent and validity of their pre-petition liens, subject to investigation

9

by any creditors or committee appointed in the Debtor's Chapter 11 case.

## The Budget

38.     The Debtor proposes to use Collateral only for ordinary and necessary limited operating expenses in connection with the wind down and orderly liquidation of the Debtor's business and assets substantially in accordance with the 6-week week operating budget annexed hereto as **Exhibit G** (the "Budget"). The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of operating the Debtor's business for the period set forth in the Budget. The Debtor believes that the use of Collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay ordinary course payable administrative expenses as they become due and payable during the period covered by the Budget without any significant diminution in value of the SBA collateral.

39.     It is submitted that in light of (a) the "equity cushion" in the Debtor's assets and (b) the adequate protection payments being proposed herein, TD Bank will be adequately protected for the use of its cash collateral.

## LEGAL BASIS FOR RELIEF REQUESTED

40.     Typically, a motion for authority to use cash collateral may commence no earlier than 14 days after service of the motion pursuant to Bankruptcy Rule 4001(b)(2). However, that same rule provides that the court may conduct a preliminary hearing before such 14 day period expires under certain circumstances.

41.     Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

(c) *Reduction.*

(1) *In General*. Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or

notice order the period reduced.

(2) *Reduction Not Permitted*. The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

42.     Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear an application such as the Application herein on shortened notice, for cause shown.

43.     The Debtor respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Application and refers the Court to the Affirmation of Dawn Kirby, Esq. pursuant to Local Bankruptcy Rule 9077-1(a) in support of an order scheduling hearing on shortened notice, submitted herewith.

**Request For Waiver Of Stay**

44.     The Debtor further seeks a waiver of the stay of the effectiveness of the Order that may be imposed by any applicable Bankruptcy Rule. As set forth above, the use of Collateral is essential to prevent potentially irreparable damage to the Debtor's value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

**Notice**

45.     This Motion is being served on notice to the Secured Creditors, all other parties asserting secured claims against the Debtor, the United States Trustee and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d), including but not limited to the Debtor's twenty (20) largest unsecured creditors.

**WHEREFORE**, the Debtor respectfully requests use of cash collateral in accordance with the terms of the annexed proposed Order and this Application, together with such other and further relief as is just and proper under the circumstances.

Dated: White Plains, New York
     October 21, 2016

Respectfully submitted,

DELBELLO DONNELLAN
WEINGARTEN WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200

By: */s/ Jonathan S. Pasternak*
     Jonathan S. Pasternak.


DUFOUR PASTRY KITCHENS INC.


By:*/s/ Carla Krasner*
     Carla Krasner, Vice President